**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re Application of
IGOR RAYKHELSON,

Case No. M-_____

For an Order to Conduct Discovery for
Use in Foreign Proceedings

**APPLICATION AND MEMORANDUM OF LAW IN SUPPORT OF**
**PETITIONER'S *EX PARTE* APPLICATION**
**FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

**BLUESTONE, P.C.**
*Attorneys for Applicant*

By: */s/ M. Zachary Bluestone*

M. Zachary Bluestone
52 Duane Street, 7th Floor
New York, NY 10007
(646) 970-7712
mzb@bluestonelaw.com

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................. 7

   A.   Named Parties in Russian Criminal Proceedings ........................................ 7

   B.   Types of Titanium and Supply Chain ......................................................... 8

   C.   Foreign Proceedings .................................................................................... 9

   D.   Nature of Evidence Sought ........................................................................ 12

III.  ARGUMENT ................................................................................................... 13

   A.   Standard for Granting Relief ..................................................................... 13

   B.   Applicant Meets the Mandatory Requirements for Granting Relief .......... 15

      1.   The Discovery Targets Reside or are Found in This District ........................ 15

         a.   **The Discovery Sought Proximately Results from the Discovery Targets' Contacts with the Southern District of New York** ....................................................... 15

      2.   The Discovery Sought is For Use in a Proceeding in a Foreign Tribunal ................... 17

      3.   Applicant is an Interested Person ........................................................ 20

   C.   The Discretionary Factors Weigh in Favor of Granting Relief ........................................ 22

## TABLE OF AUTHORITIES

**Cases**

*AZ v. Shinseki*, 731 F.3d 1303 (Fed. Cir. 2013)...................................................... 27

*Banque Worms v. BankAmerica Intern.*, 77 N.Y.2d 362 (1991) ................................. 26

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012).................. 24, 25

*Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24 (2d Cir. 1998)................................. 19

*Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) ............................. 18

*Gushlak v. Gushlak*, 486 F. App'x 215 (2d Cir. 2012)................................................ 15

*Ijk Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669 (2d Cir. 2022) ......................... 23

*In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08-20378-

    MC, 2011 WL 181311 (S.D. Fla. Jan. 19, 2011) .................................................... 20

*In re Application of Operacion y Supervision de Hoteles, S.A. de C.V.*, 2015 WL 82007

    (S.D.N.Y. Jan. 6, 2015)................................................................................ 27

*In re Arida, LLC*, No. 19-mc-522 (PKC), 2020 U.S. Dist. LEXIS 239397, 2020 WL 7496355

    (S.D.N.Y. Dec. 21, 2020) ............................................................................. 25

*In re Bernard L. Madoff Investment Securities, LLC*, 605 B.R. 570 (Bankr. S.D.N.Y. 2019)..... 27

*In re Brookfield Infrastructure Partners L.P.*, No. 24-mc-533 (LJL), 2025 U.S. Dist. LEXIS

    100269 (S.D.N.Y. May 27, 2025)................................................................... 21, 23

*In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361 (S.D.N.Y. 2019) ................. 21

*In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) .................................................... 16

*In re Kolomoisky*, No. M19-116, 2006 U.S. Dist. LEXIS 58591, 2006 WL 2404332 (S.D.N.Y.

    Aug. 18, 2006) ......................................................................................... 25

*In re Wilhelm*, 470 F. Supp. 2d 409 (S.D.N.Y. 2007).................................................. 20

*Intel Corp. v. Advanced Micro Devices, Inc.* 542 U.S. 241 (2004) ........................... 13, 15, 22, 24

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259................................. 20

*Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38 (2d Cir. 1996)............................ 22

*Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327 (2012)........................................... 18

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013).................................... 18

*Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6 (2d Cir. 2014)........................ 14

*Mees v Buiter*, 793 F.3d 291 (2d Cir. 2015) ................................................................. 14, 15, 19

*Nike, Inc. v. Wu*, 349 F. Supp. 3d 310 (S.D.N.Y. 2018) ............................................... 16, 18

*Nike, Inc. v. Wu*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018) ............................................... 16

*Optimal Inv. Servs., S.A. v. Berlamont*, 773 F.3d 456 (2d Cir. 2014).................................... 14, 24

*United States v. Robinson*, 544 F.2d 110 (2d Cir. 1976) ............................................... 27

**Statutes**

28 U.S.C. § 1782(a) (2024)......................................................................... 14, 16, 20

**Rules**

FRE 803(7)........................................................................................ 27

IGOR RAYKHELSON ("Applicant") respectfully submits this Application and Memorandum of Law in Support of his *Ex Parte* Application for Judicial Assistance, pursuant to 28 U.S.C. § 1782, in obtaining documentary evidence for use in criminal proceedings in Russia, as described below ("Application").  In support, Applicant states as follows:

## I.    INTRODUCTION

Applicant seeks assistance from the United States District Court for the Southern District of New York to obtain intermediary bank discovery from certain entities found in this District that are in the business of processing U.S. Dollar denominated wire transfers, for use in foreign proceedings in Russia. Applicant seeks discovery from: (a) Bank of America, N.A.; (b) Bank of China; (c) Barclays Bank PLC, (d) BNP Paribas, (e) Citibank, N.A., (f) Commerzbank AG, (g) Deutsche Bank Trust Co. Americas, (h) HSBC Bank USA, (i) JPMorgan Chase Bank, N.A., (j) Société Générale, (k) Standard Chartered Bank, (l) Bank of Nova Scotia, (m) The Bank of New York Mellon, (n) UBS AG, and (o) Wells Fargo Bank (the "New York Banks") and (p) The Clearing House Payments Company LLC ("TCH") (collectively, the "Discovery Targets"), which reside or are found in this District.[1]

The criminal proceedings in Russia, as described below, allege a conspiracy to fraudulently inflate the price of various titanium products sold to Russian titanium producer PJSC VSMPO-AVISMA ("VSMPO") between 2016-2020. VSMPO plays a critical role in the Russian military-industrial complex. The Russian authorities originally allege that the former president of VSMPO

---

[1]    The facts relevant to this Application are set forth below and in the Declaration of Roman Bubnov ("Bubnov Decl."), the Declaration of Igor Raykhelson ("Raykhelson Decl."), and the Declaration of M. Zachary Bluestone ("Bluestone Decl."), which are being filed contemporaneously herewith. The facts stated in these Declarations are incorporated herein by reference.

colluded with Applicant and two Russian suppliers to overcharge VSMPO. The prosecutor concluded that prices were inflated because they were higher than those offered by a different supplier, Russia-based RegionProm LLC ("RegionProm").

However, the Russian criminal proceedings that Applicant is forced to defend is part of a much broader attack, smear campaign, and abuse of process against Applicant. In addition to defending himself in the criminal proceedings—which this Application concerns—Applicant will be defending himself and protecting his rights in proceedings throughout the world.

**In short, Applicant is a victim of the Russian State**.

By way of background and context:

- In and around 2020, Interlink (to whom Applicant is a consultant) and VSMPO entered into a settlement resolving certain commercial disputes covering years of their titanium and metal trading relationship. Bubnov Decl., ¶ 28. In 2024, Interlink commenced arbitration in Switzerland after VSMPO breached that settlement. *Id.* Applicant believes the Russian criminal charges were then instigated by VSMPO to pressure him and Interlink in that arbitration.[2] *Id.*; Raykhelson Decl., ¶ 22. In support of the arbitration proceeding, Interlink obtained a pre-award freezing injunction, enjoining CHF 20,303,253 (equivalent to USD 22,693,351 as of Dec. 19, 2024) of VSMPO's assets in Switzerland.[3]

- VSMPO is a key part of the Russian industrial infrastructure. Russian State-owned company Rostec has control over VSMPO: it holds a 25% interest and blocking share in VSMPO.

---

[2] The alleged transactions with VSMPO underlying the criminal accusations in Russia are independent of those concerning settlement in the Swiss arbitration. Raykhelson Decl., ¶ 23.

[3] *See PJSC VSMPO-Avisma Corp. v. Interlink Metals & Chems. AG*, Lausanne District Justice of the Peace [Tribunal de paix du district de Lausanne], Case No. KE25.013253/BBl/arv (Switz.), May 15, 2025. The freezing injunction has since been overturned.

VSMPO claims to be the largest titanium product producer in the world[4] and produces and supplies titanium and metal products for the Russian military and security services,[5] and historically, to both the global aerospace market and Russian retail market, among others. VSMPO is of critical strategic importance to the Russian State, in particular in supplying aviation grade titanium for use in, for example, Russian military fighter jets, missiles and drones.

- Rostec is a Russian defense conglomerate that owns hundreds of companies and is under U.S. and European sanctions. Rostec is led by a close ally of Russian President Vladimir Putin, Mr. Sergey Chemezov.[6]

- Following the unlawful invasion of Crimea by Russia, Mr. Chemezov was sanctioned by the United States ("the U.S"), the European Union ("the E.U") and the United Kingdom ("the U.K") in 2014. Rostec was similarly sanctioned by the U.S, the E.U and the U.K in 2014. These sanctions, in summary, impose asset freezes (blocking of property), and subject to certain exceptions and in the absence of licenses, prohibit making funds, economic resources or services available to them.

- Ostensibly, the majority of shares in VSMPO are held indirectly by Mr. Mikhail Shelkov, "an oligarch considered to be in [President Vladimir] Putin's 'inner circle.'"[7] Mr.

---

[4]     *See* VSMPO-AVISMA website: https://vsmpo.ru/en/ ("PJSC VSMPO-AVISMA Corporation is the world's largest titanium producer...")

[5]     Adam Taylor, *Two years after start of Ukraine war, Russian titanium keeps flowing to West*, Washington Post, March 21, 2024 (https://www.washingtonpost.com/world/2024/03/21/russia-titanium-exports-sanctions/) (last accessed Sept. 15, 2025)

[6]     Adam Taylor, *supra,* n.5

[7]     *China and Russia Actions Threaten Critical U.S. Manufacturing Sectors*, Exiger (https://www.exiger.com/perspectives/foreign-adversaries-threaten-critical-u-s-manufacturing-

Shelkov, who had never owned businesses of VSMPO's size, became a billionaire in 2012 when the Russian State, through Rostec, ceded 65.27% of VSMPO to him.[8] According to Russian media, the Russian State put Mr. Shelkov into this position because of his long-standing relationship to Mr. Chemezov.[9]

- Mr. Chemezov, a retired Russian colonel general, longtime friend of Vladimir Putin, and KGB colleague, was and is currently the CEO of Rostec. *Id*. Mr. Chemezov is also the current Chairman of the Board of VSMPO, and has been reported to be the "conduit for [Russian] [S]tate decisions."[10]

- In short, as concluded by certain Russian media, Mr. Shelkov is merely the Russian State's figurehead.[11]

---

[8]  sectors/#:~:text=VSMPO%2DAVISMA%2C%20the%20major%20Russian,reliance%20on%20titanium%20sponge%20imports.) (last accessed Sept. 25, 2025).

[8]  Dmitry Velikovsky, *American Startup for the FSB General's Son*, IStories, Jan. 13, 2025, (https://istories.media/en/stories/2025/01/13/american-startup-for-the-fsb-generals-son/)  (last accessed Sept. 26, 2025)

[9]  *In the wrong hands Millions of users gave their data to an American 'travel assistant' app. Then its creator sold it to a Russian businessman with close ties to Putin,* IStories, Jan. 13, 2025. (https://meduza.io/en/feature/2025/01/13/millions-of-users-gave-their-data-to-an-american-travel-assistant-app-then-its-creator-sold-it-to-a-russian-businessman-with-close-ties-to-putin) (last accessed Sept. 25, 2025).

[10]  Roman Katin, *From Fashion to Titanium*, Important Stories, Aug. 20, 2025 (https://storage.googleapis.com/istories/en/stories/2025/08/20/from-fashion-to-titanium/index.html) (last accessed Sept. 25, 2025).

[11]  Video report *"Lapdogs of War - A guide to Russia's wartime oligarchs"*, from 14:35. Source:  https://www.proekt.me-dia/en/guide-en/russian-war-oligarchs-en/  or https://www.youtube.com/watch?v=ZPyzquZ0BAw (last accessed 12 September 2025); Exh. C-82: Screenshots of website The Project and video report 'Lapdogs of War - A guide to Russia's wartime oligarchs'.

- Mr. Shelkov holds his shares in VSMPO through his ownership of Industrial Investments LLC.[12] The current CEO of Industrial Investments is Anna Belyasova, a former head of a modeling agency (through 2016), and former assistant to Mr. Shelkov. *Id*.

- In January 2023, Mr. Shelkov was made subject to sanctions by Ukraine, with certain of his assets being seized, including apartments, vehicles, and Ukrainian bank accounts.[13] According to Ukraine's Security Services, VSMPO, controlled by Mr. Shelkov, "covertly supplied Ukrainian titanium raw materials to Russia for the needs of the Russian military-industrial complex before and during the full-scale invasion."[14]

- In June 2025, Mr. Shelkov was sanctioned by Canada as an individual who has "engaged in activities that support or contribute to abuses in relation Russia's full-scale invasion of Ukraine."[15]

Not only is VSMPO aiming to improperly influence the Swiss arbitration proceedings, but Applicant also believes that VSMPO, and those that control it, and Mr. Shelkov, have coordinated

---

[12] Roman Katin, *From Fashion to Titanium*, Important Stories, Aug. 20, 2025 (https://storage.googleapis.com/istories/en/stories/2025/08/20/from-fashion-to-titanium/index.html) (last accessed Sept. 25, 2025).

[13] Saumya Joshi, *Russia-Ukraine war: Kyiv sanctions Russian billionaire Mikhail Shelkov; seizes assets*, Jan. 24, 2023 (https://www.republicworld.com/world-news/russia/russia-ukraine-war-kyiv-sanctions-russian-billionaire-mikhail-shelkov-seizes-assets-articleshow) (last accessed Sept. 25, 2025).

[14] Sofia Maksymiv, *Sanctioned, yet supplied: US and EU sold Russia $275M in titanium later used for weapons during three years of invasion into Ukraine*, Trap Aggressor, June 14, 2025 (https://trap.org.ua/en/publications/sanctioned-yet-supplied-us-and-eu-sold-russia-275m-in-titanium-later-used-for-weapons-during-three-years-of-invasion-into-ukraine/) (last accessed Sept. 25, 2025).

[15] Government of Canada, Sanctions – Russian invasion of Ukraine, Entered into Force June 13, 2025 (https://www.international.gc.ca/world-monde/issues_development-enjeux_developpement/response_conflict-reponse_conflits/crisis-crises/ukraine-sanctions.aspx?lang=eng) (last accessed Sept. 25, 2025).

a widespread media campaign to discredit Applicant[16] and intimidate his family through raids and legal threats. *See* **Exhibit A**; *generally,* Bubnov Decl. and Raykhelson Decl.; *see also* КОНТ[17], *The secret battle for Russia's rare earth treasures: who's really behind the arrests and criminal cases?* ("This is why the criminal case against Mikhail Voevodin, the former head of VSMPO-AVISMA, and his entourage no longer appears to be a routine investigation, but rather part of the struggle for national resource sovereignty."). Applicant anticipates initiating civil and criminal actions concerning the defamatory statements, against VSMPO, and its representatives involved in both making, and authorizing, the widespread and unfounded attacks, as well as for abuse of process in instigating the Russian criminal proceedings against Applicant.

Nevertheless, Applicant must defend himself in the Russian criminal proceedings where he is accused of being part of a fraudulent conspiracy to inflate the price of titanium materials to VSMPO.

To that end, Applicant seeks bank wire records to show that RegionProm was selling a different type of titanium, sold at a vastly lower price than the titanium at issue in the alleged conspiracy. The Discovery Targets, as intermediary/correspondent banks, maintain records of USD denominated wire transfers passing from domestic to international banks, and vice versa. RegionProm's titanium materials are made with materials from the Russian market, are of retail-

---

[16]    BFMRU, *Former head of VSMPO-Avisma Voevodin arrested in fraud case*, June 27, 2025 (https://www.bfm.ru/news/576670) (last accessed Sept. 25, 2025); RTVI, *Titans of the Scheme: Former Head of VSMPO-AVISMA Arrested for 4 Billion Ruble Fraud*, June 27, 2025 (https://rtvi.com/news/titany-shemy-eks-glava-vsmpo-avisma-arestovan-za-mahinaczii-na-summu-4-mlrd-rublej/) (last accessed Sept. 25, 2025).

[17]    КОНТ — платформа для социальной журналистики ("KONT — platform for social journalism") June 29, 2025 (https://cont.ws/@oven-fortuna/3071649) (last accessed Sept. 25, 2025).

grade, and typically not traded in USD. The titanium alleged to be sold at inflated prices—at the heart of the criminal allegations—are made with materials from the international market, are aerospace-grade, and traded in USD. By establishing that RegionProm was not purchasing titanium materials from the international market—evidenced through a lack of USD purchases originating with RegionProm—Applicant will be able to rebut the fraud allegations and show that RegionProm offered VSMPO different titanium materials than those alleged to be sold at inflated prices, and that the prosecutor's basis for determining that were prices were inflated is not credible.

## II.   FACTUAL BACKGROUND

### A.   <u>Named Parties in Russian Criminal Proceedings</u>

Applicant, Igor Raykhelson, is a consultant to Switzerland-based metal trader Interlink Metals & Chemicals AG ("Interlink"). Raykhelson Decl., ¶ 4. Applicant has been involved in the supply and trading of metals, primarily titanium, for over 40 years. *Id.* Applicant is a U.S. Citizen, obtained a bachelor's degree from New York University, a Master of Business Administration from the Stern School of Business, at New York University, and a degree in music from the Leningrad Conservatory (n/k/a N. A. Rimsky-Korsakov Saint Petersburg State Conservatory). *Id.*, at ¶ 3.  In addition to his work in titanium trading, Applicant is a world-renowned pianist and composer, having performed and recorded globally for decades. *Id.*

Mikhail Voevodin ("Voevodin") is the former president of VSMPO, and has been detained in Russia awaiting trial for his role alleged role in the fraudulent conspiracy to overcharge VSMPO. Bubnov Decl., ¶ 9.

NPO Vtorpromresursy LLC ("VPR") and Torgovo-promyshlenny Vektor LLC ("TPV") are/were Russian titanium suppliers to VSMPO. They sold the titanium products with prices that the Russian prosecutor has alleged to have been fraudulently inflated. *Id.* at ¶¶ 6, 7, 9, 13, 14.1.

Evgeny Lysenko ("Lysenko") is the director of VPR, and as with Voevodin, has been detained in Russia awaiting trial for his alleged role in the fraudulent conspiracy to overcharge VSMPO.[18] *Id*. at ¶ 9.

RegionProm LLC is a Russian supplier of titanium materials to VSMPO. Based on his more than 40 years of experience in the industry, Applicant believes that RegionProm sells only retail-grade titanium materials, and not the lighter, stronger, titanium materials used in the aerospace industry that are sold by VPR/TPV. *Id*. at ¶¶ 27, 46.1, 46.2; Raykhelson Decl., ¶¶ 7-9. In and around 2016-2020, the time of the alleged inflated sales to VSMPO, the price of retail grade titanium was approximately 30% less than aerospace-grade titanium. Raykhelson Decl., ¶ 12.

## B.    Types of Titanium and Supply Chain

Interlink is one of the world's largest distributors, traders, and users of various titanium products. Raykhelson Decl., ¶¶ 4-5. A competitive advantage of Interlink is its ability to access scrap titanium alloys from the international market for use in the aerospace industry. *Id*. at ¶ 6. The standard to determine whether titanium scrap is suitable for the aerospace industry is whether it meets ASTM Standards[19], which Interlink's scrap satisfies ("Western Alloy Scrap"). *Id*. Interlink's focus is sourcing Western Alloy Scrap titanium, which it purchases (in USD) and resells to purchasers around the world, including in Russia (in and prior to 2020). *Id*. Purchasers of Interlink's Western Alloy Scrap titanium typically process it into feedstock ("Charge") for resale to titanium product manufacturers, such as VSMPO. *Id*. at ¶ 8. Western Alloy Charge is ultimately used in products such as engine parts, landing gear, among other uses. *Id*. at ¶ 6.

---

[18]    Andrey Petrovich Orlov, who is deceased, was the director of TPV.

[19]    American Society for Testing and Materials ("ASTM") standards is one of the most authoritative standards in the U.S., as well as in other parts of the world. Raykhelson Decl., ¶ 6.

VPR/TPV were purchasers of Interlink's Western Allow Scrap titanium. *Id*. at ¶ 8. As far as Applicant is aware, they processed the scrap metal into Western Alloy Charge and sold it to VSMPO between 2014-2020. *Id*. VSMPO then used this Charge in manufacturing titanium products for the global aerospace industry. *Id*. at ¶¶ 7-9.

    C.    **<u>Foreign Proceedings</u>**

<u>Proceeding 1: Conspiracy to commit fraud against VSMPO by Voevodin, Lysenko, and Applicant</u>. The first proceeding supporting this Application began as the Russian government's criminal prosecution of Voevodin, which subsequently added Lysenko, for conspiracy to commit fraud by inflating prices for Western Alloy Charge sold by VPR/TPV to VSMPO ("Foreign Proceeding 1"). Bubnov Decl., ¶¶ 6-9. Initially, this proceeding was based on an "abuse of authority" claim against Voevodin, was approved by the prosecutor, and went before a judge in the Verkhnyaya Salda District Court. *Id*. at ¶ 7. However, testimony by VSMPO led to the heightened charge of fraud, whereby the Russian court returned the matter to the prosecutor for further investigation. *Id*. Applicant has been advised that these heightened charges will shortly be approved by the prosecutor and transferred back to court for trial and sentencing of Voevodin and Lysenko. *Id*. at 7-11. Additionally, VSMPO's recent testimony implicated Applicant in the conspiracy. *Id*. at ¶¶ 16-18.

The outcome of Foreign Proceeding 1 will have a significant impact on the ultimate prosecution, trial, and sentencing of Applicant. *Id*. at ¶¶ 11-14. If this proceeding leads to an approval from the prosecutor, and subsequent trial on the underlying fraud and conspiracy against Voevodin and Lysenko, which is anticipated within weeks from now, it will be severely detrimental to Applicant. *Id*. Under Russian law, as Applicant has been accused within this proceeding, Applicant has an opportunity to submit evidence. *Id*. at ¶¶ 12-13. While Applicant

denies the allegations that he had any involvement in sales from VPR/TPV to VSMPO, ownership

or control of VPR/TPV (Bubnov Decl., ¶¶ 19-26; Raykhelson Decl., ¶¶ 15-16), or participated in

any conspiracy to commit fraud (*Id.*), if Applicant provides evidence that there could not have

been a fraud because prices were not inflated—by establishing that RegionProm did not sell

Western Alloy Charge to VSMPO, and only sold lower priced retail-grade titanium Charge, it will

greatly undermine the prosecution's credibility. Bubnov Decl., ¶ 46.1. Evidence from the

Discovery Targets reflecting that RegionProm did not make purchases in USD between July 11,

2015, and November 8, 2019,[20] will establish that RegionProm did not purchase Western Alloy

Scrap, supporting a defense against fraud. *Id.* at ¶¶ 46.3, 48; Raykhelson Decl., ¶¶ 17-20.

Proceeding 2: Conspiracy to commit fraud against VSMPO by Applicant before the
Verkhnesaldinsky District Court. While Applicant has been charged in Foreign Proceeding 1 as

an accused, as the prosecution's case against Voevodin and Lysenko is more advanced than as

against Applicant, as it currently stands, Applicant will most likely be tried once the investigation

against him (as is being investigated in Foreign Proceeding 1) concludes, is approved by the

prosecutor, and transferred to the Verkhnesaldinsky District Court, where Applicant will be tried

and sentenced ("Foreign Proceeding 2"). Bubnov Decl., ¶ 42. This trial and sentencing will be

based on the same charges of conspiracy to fraudulently inflate prices on sales to VSMPO. *Id.* at

¶ 10.

On July 24, 2025, that Applicant's Russian counsel was shown the formal charges by the

lead investigator confirming the initiation of a criminal prosecution against Applicant. *Id.*

---

[20]    This was the time period surrounding the alleged inflated sales to VSMPO (based on a 5-
6 month lead time for purchasing Western Alloy Scrap, and the criminal allegations of conspiracy
between January 11, 2016, and May 8, 2020. Bubnov Decl., ¶ 9, Ex. 5; Raykhelson Decl., ¶ 21.

Applicant's counsel was not permitted to make a copy. Bubnov Decl., ¶ 10. Applicant's counsel was unable to obtain a copy of the indictment until September 22, 2025. Bubnov Decl., ¶¶ 10, 41.

While denied a copy of the formal indictment against Applicant, there is a broad attack taking place against Applicant. Specifically, Applicant learned that the investigation into his alleged involvement was continuously and unusually escalated: first, the investigation was led by the Main Investigative Directorate of the Ministry of Internal Affairs of Sverdlovsk, then subsequently transferred to the Investigative Committee of the Russian Federation—an investigative body limited to "special subjects" such as violations by judges, government deputies, and minors (none of which are present with Applicant). *Id*. at ¶ 8. Second, a warrant for Applicant's arrest has been issued. *Id*. at ¶¶ 10, 49. Third, Applicant's wife's Moscow apartment has been raided in connection with the investigation. *Id*. at ¶¶ 43-44, 50. The investigation of Applicant is active and ongoing, with the prosecutor anticipated to approve the indictment of Applicant, which will then lead to sentencing before the Verkhnesaldinsky District Court. *Id*. at ¶¶ 14-15, 42. Accordingly, there is an urgent need for the documents sought. *Id*. at ¶ 14.

While Applicant denies having any role in an alleged conspiracy to defraud VSMPO, evidence from the Discovery Targets reflecting the lack of USD purchases by RegionProm will support Applicant's defense challenging RegionProm's sales prices as a measure for what constitutes an "inflated" price. *Id*. at ¶¶ 46.1, 46.3; Raykhelson Decl., ¶¶ 17-20. Further, without this evidence, it is highly likely that the Russian prosecutor will approve the indictment of Applicant, and the criminal prosecution against Applicant will move to the Verkhnyaya Salda District Court, where Applicant's criminal prosecution will be tried and sentenced before a judge, in the same manner as is taking place against Voevodin and Lysenko. Bubnov Decl., ¶¶ 11, 42.

### D.    <u>Nature of Evidence Sought</u>

Applicant seeks to obtain documentary evidence located in this District from the Discovery Targets, which are found in this District and provide banking services and process USD wire transfers and payments, and will have processed banking transactions, wire transfers, and payments relevant and probative to the issues in the Foreign Proceedings—namely whether RegionProm had access to Western Alloy Scrap, in order to develop Western Alloy Charge to sell to VSMPO. If RegionProm did not purchase scrap in USD, it would be significant evidence rebutting RegionProm offering Western Alloy Charge to VSMPO, thus undermining the prosecutor's claim that RegionProm's allegedly lower pricing is determinative of alleged "inflated" pricing.

The New York Banks act as correspondent banks in this District for U.S. Dollar-denominated wire transfers passing from domestic to international banks, and vice versa, including banks in Russia. Bluestone Decl., ¶ 7. TCH provides both transmission of instruction messages and settlement of funds between financial institutions that is used to process international U.S. Dollar funds transfers made among international banks. There is no doubt that records of wire transfers are held by the New York Banks and TCH and that these records will be highly relevant and probative in the Russian proceedings. Bluestone Decl., ¶¶ 7, 26-27.

The discovery sought in this proceeding directly relates to TCH and the New York Banks' U.S. Dollar clearing business in this District—namely, U.S. Dollar-denominated wire transfers for which the New York Banks and TCH were involved in as originating bank, beneficiary bank, intermediate or correspondent bank to CHIPS, Fedwire, or where the Discovery Targets otherwise facilitated interbank funds transfers, as well as documents relating thereto. Bubnov Decl., ¶¶ 45.1, 47; Bluestone Decl., ¶ 6.

This Application meets all the requirements of 28 U.S.C. § 1782 ("Section 1782"). The Application is made by an interested person. The Discovery Targets "reside or are found" in this District because they maintain their principal place of business here, have had systematic and continuous operations in New York for decades, and the documents sought—USD wire transactions—proximately result from the Discovery Targets' forum contacts within this District. The documents sought through the Application are for use in the Foreign Proceedings and are relevant to the issues at stake there. In addition, each of the discretionary factors established by the U.S. Supreme Court in its seminal case, *Intel Corp. v. Advanced Micro Devices, Inc.* 542 U.S. 241 (2004), weigh in favor of granting the Application.

Therefore, Applicant respectfully requests that the Court grant its Application and allow Applicant to serve the proposed subpoenas[21] on each of the Discovery Targets.

## III.    ARGUMENT

### A.    <u>Standard for Granting Relief</u>

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  Section 1782 "provide[s] for assistance in obtaining documentary and other tangible evidence as well as testimony." *Id*. at 248.  The statute reads, in pertinent part:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before

---

[21]    Should the Court grant the Application, Applicant proposes to serve subpoenas substantially in the form as attached as **<u>Exhibit B</u>**.

a person appointed by the court.  By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.  A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a) (2024).

Courts have distilled § 1782's language into a two-part test consisting of a mandatory component and a discretionary component for granting relief. First:

> A district court is authorized to grant a § 1782 request where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.

*Mees v Buiter*, 793 F.3d 291, 297 (2d Cir. 2015); *Optimal Inv. Servs., S.A. v. Berlamont*, 773 F.3d 456, 460 (2d Cir. 2014); *Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6, 8 (2d Cir. 2014) (summary order); *accord Intel*, 542 U.S. at 256-63 (addressing the factors).[22]

Next, once a district court has determined that the mandatory requirements for relief under § 1782 are met, the court is free to grant discovery in its discretion. *Mees*, 793 F.3d at 297. To aid that discretion, the *Intel* Court delineated the following four factors: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because the "need for §

---

[22]    District courts may, and indeed typically do, grant § 1782 on an *ex parte* basis. *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash [a subpoena] pursuant to Federal Rule of Civil Procedure 45(c)(3).") (citing further authority therein) (summary order).

1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the Unites States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65; *Mees*, 793 F.3d at 298 (reciting factors).

As demonstrated below, Applicant satisfies the statutory requirements and, therefore, this Court should grant the relief sought in the Application.

### B.    Applicant Meets the Mandatory Requirements for Granting Relief

#### 1.    The Discovery Targets Reside or are Found in This District

This Court's authority to compel discovery under § 1782 extends to any "person," including both individuals and entities, that "resides or is found in" the district in which the application is made. 28 U.S.C. § 1782(a). The Second Circuit has "repeatedly recognized Congress's intent that 1782 be 'interpreted broadly'" and that 1782 supports a flexible reading of the phrase "resides or is found." *See In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019). An entity "resides or is found in" this District if this Court can exercise personal jurisdiction over it. *In re del Valle Ruiz*, 939 F.3d at 528 (the "reside or is found" statutory "language extends § 1782's reach to the limits of personal jurisdiction consistent with due process").

Here, the New York Banks and TCH maintain their principal place of business within this District and engage in the sort of systematic and continuous activities that courts have considered sufficient to allow a foreign corporation to be "found" in a district for purposes of Section 1782.

> a.    The Discovery Sought Proximately Results from the Discovery Targets' Contacts with the Southern District of New York

This Court has repeatedly granted requests seeking intermediary bank discovery from the New York Banks and TCH. Bluestone Decl., ¶ 7. The discovery sought here directly relates to the Discovery Targets' contacts with this District. *Id.,* at ¶¶ 5-7, 28). *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310 (S.D.N.Y. 2018) ("*Nike I*"), *aff'd, Nike, Inc. v. Wu*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018) ("*Nike II*"). Specifically, the discovery sought here is records relating to wire transfers and documents relating thereto routed through the New York Banks and TCH in New York City revealing whether RegionProm purchased Western Alloy Charge, first by showing whether there were any USD transactions, and whether RegionProm purchased from Western Alloy scrap suppliers.

The New York Banks act as worldwide correspondents in New York City to process U.S. Dollar denominated wire transfers. Bluestone Decl., ¶¶ 6-8; *see also* Ex. A-B to Bluestone Decl. These banks process U.S. Dollar denominated wire transfers passing from international banks, including banks in Russia, are virtually all located in New York City and include most of the New York Banks.

The New York Banks and TCH not only act as worldwide correspondent banks or clearing systems to process U.S. Dollar denominated wire transfers in New York City, but also have long-established connections to New York. They each maintain headquarters or branches in this District and regularly accept and respond to subpoenas. Bluestone Decl., ¶¶ 7-28. In addition, the New York Banks are either participants in the Clearing House Interbank Payments System ("CHIPS"), the Federal Reserve's Fedwire Fund Service ("Fedwire"), or a major participant in the clearing of international U.S. Dollar denominated transfers. (*Id*. at ¶¶ 6-28; Exs. A-B to Bluestone Decl.) Almost all New York Banks are registered with the New York Department of Financial Services ("NYDFS") to do business in New York, as required by N.Y. Banking Law § 200. *Id.*

16

The New York Banks and TCH's ability to conduct business and process U.S. Dollar denominated wire transfers is completely dependent upon their extensive use of its contacts in New York and the subject of the discovery sought through this Application. "This alone would be sufficient to establish that the Banks have sufficient minimum contacts with the forum, as 'the selection and repeated use of New York's banking system … constitutes purposeful availment of the privilege of doing business in New York.'" *Nike I*, 349 F. Supp. 3d 310, quoting *Gucci Am., Inc. v. Weixing Li,* 135 F. Supp. 3d 87 (S.D.N.Y. 2015) ("*Gucci III*") (internal quotation omitted).

The New York Court of Appeals has recognized the "widespread use of correspondent accounts nominally in New York to facilitate the flow of money worldwide, often for transactions that otherwise have no other connection to New York, or indeed the United States." *Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327 (2012) ("*Licci III*"). Therefore, the repeated use of a correspondent account in New York, in effect, a "course of dealing" show "purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States." *Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013) ("*Licci IV*"), quoting *Licci III*, 20 N.Y.3d 327. Relying on *Licci III* and *Gucci III*, then-Chief Judge McMahon in *Nike II*, held that "the Banks' establishment and maintenance of correspondent accounts was sufficient to support the exercise of personal jurisdiction over the Banks for purposes of the Subpoenas." *Nike II*, 349 F. Supp. 3d 310.

Accordingly, Applicant satisfies the first requirement under § 1782.

## 2.     The Discovery Sought is For Use in a Proceeding in a Foreign Tribunal

Likewise, Applicant satisfies the second statutory requirement because the discovery sought through the instant Application is for use in the Foreign Proceedings. Bubnov Decl., ¶¶ 13-

14, 42, 45, 45.1, 46.1, 46.3, 46.4, 48. Specifically, in both Foreign Proceedings, Applicant intends to use documentary evidence obtained from the Discovery Targets to show that RegionProm does not makes purchases from suppliers in U.S. Dollars, and therefore does not have Western Alloy Scrap to turn into Western Alloy Charge to then sell to VSMPO. *Id.* at 46.1, 46.3, 46.4. This will provide a defense to the allegations that VPR/TPV sales were inflated by comparison to those supposedly offered by RegionProm. *Id.* at ¶¶ 42, 46.1, 48.

The Second Circuit in *Euromepa, S.A. v. R. Esmerian, Inc.* explained that the "for use in a in a foreign or international tribunal" factor turns on (1) whether there actually is a foreign proceeding; and (2) whether the foreign proceeding is adjudicative in nature. 154 F.3d 24, 27 (2d Cir. 1998). The Second Circuit has also held that a § 1782 application's "for use" requirement is satisfied by showing that the materials the applicant seeks will assist Applicant at some stage of a foreign proceeding that is within reasonable contemplation at the time the application is made. *Mees*, 793 F.3d at 301. The court elaborated "[t]he plain meaning of the phrase "for use in a proceeding" indicates something that will be employed with some advantage or serve some use in the proceeding – not necessarily something without which the applicant could not prevail." *Mees* at 298. The court further noted, "Under § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chance of success." *Id.* at 299.

Section 1782 authorizes a court to order discovery for "use in a proceeding in a foreign or international tribunal, *including criminal investigations conducted before formal accusation*." 28 U.S.C. § 1782(a) (emphasis added). Accordingly, by its terms, § 1782 authorizes discovery for use in criminal investigations. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (the legislative history of § 1782 "reflects Congress's recognition that judicial assistance would be available whether the foreign or international proceeding or investigation is of a criminal, civil,

administrative, or other nature").

Further, where discovery is sought in connection with a criminal investigation, Section 1782's "foreign tribunal" requirement is satisfied as long as a "formal accusation"—and thus a criminal proceeding—is "within reasonable contemplation." *See In re Wilhelm*, 470 F. Supp. 2d 409, 411 (S.D.N.Y. 2007) (granting a § 1782 application with respect to a foreign criminal investigation where the court found that an "'adjudicative proceeding,' which is to say a 'formal accusation,' against the individuals in question lies within 'reasonable contemplation'"); *In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08-20378- MC, 2011 WL 181311, at *9 (S.D. Fla. Jan. 19, 2011) (finding the foreign tribunal requirement satisfied where "the discovery sought by the Applicants is for use in a foreign criminal investigation and that proceedings before a judicial tribunal are within reasonable contemplation"). Moreover, in determining "whether criminal proceedings are sufficiently ripe to satisfy the requirements of § 1782, the Second Circuit has considered whether applicants have a practical ability to inject the requested information into [the] foreign proceeding." *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 370 (S.D.N.Y. 2019) (citations omitted) (finding the applicants satisfied the "for use" requirement for having the practical ability to submit evidence to the authorities and courts involved in the criminal proceedings).

Here, Applicant seeks the requested discovery to (1) submit in Foreign Proceeding 1 to defend the ongoing investigation against him, and to prevent a prejudicial order being issued against his alleged co-conspirators, and (2) to submit in Foreign Proceeding 2 as part of his own defense when he is tried and sentenced.

Foreign Proceeding 1 is an active and formal criminal prosecution. Both Lysenko and Voevodin have been detained and are awaiting final approval by prosecutor, and their subsequent

19

trial and sentencing. Bubnov Decl., ¶¶ 9-11. Applicant is an interested party, an accused party, and has the practical ability to introduce evidence in Foreign Proceeding 1.

Additionally, the prosecution in Foreign Proceeding 1 will most likely be approved by the prosecutor against Applicant, with Applicant being subsequently tried and sentenced by a Russian judge, leading to Foreign Proceeding 2. *Id*. at ¶¶ 10, 42. Even with limited documentary evidence of the commencement of the formal prosecution against Applicant (outside of the Bubnov Declaration), Applicant, at a minimum, has shown that his prosecution is "reasonably contemplated." *See In re Brookfield Infrastructure Partners L.P.*, No. 24-mc-533 (LJL), 2025 U.S. Dist. LEXIS 100269, *36 (S.D.N.Y. May 27, 2025) ("to be sufficiently 'contemplated,' however, MML must show 'reliable indications of the likelihood' that the investigation will be brought before a qualifying tribunal 'within a reasonable time.") (citation omitted). The severity of the charges against Applicant are reflected in the evidence that *has* been provided to him, or which is otherwise known, or accessible by his Russian counsel: the investigation proceeded to the highest investigative body in Russia, the Investigative Committee of the Russian Federation, which is traditionally reserved for "special subjects," being crimes committed by judges, government deputies, and minors (*Id*. at ¶ 8), a warrant for his arrest issued (*Id*. at ¶ 10), and his wife's Moscow apartment raided (*Id*. at ¶¶ 43-44). Because there is a formal indictment and proceeding against Applicant there is an ongoing foreign proceeding, and with the Russian government's prosecution before a judge for trial and sentencing being "reasonably contemplated."

Applicant has the right to present the information obtained through this Application in both of the Foreign Proceedings, which will be used to rebut the conspiracy to commit fraud allegations. Therefore, the second mandatory requirement of Section 1782 is met.

### 3.    Applicant is an Interested Person

A person who has "participation rights" and "possesses a reasonable interest in obtaining judicial assistance… qualifies as an interested person within any fair construction of that term." *Intel*, 542 U.S. at 256-7 (internal citations omitted).  Additionally, "[t]he legislative history to § 1782 makes plain that 'interested person' includes a party to the foreign litigation."  *See Lancaster Factoring Co. Ltd. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) (internal citations omitted).

Applicant is as an "interested party" in Foreign Proceeding 1 because he has the legal right to submit evidence. Bubnov Decl., ¶¶ 12-13. When an applicant has an "established right to provide evidence and have the party [to the foreign proceeding consider it]…or a recognized relationship, such as that of an agent and principal, [that] may be sufficient to make an otherwise stranger to the proceeding 'interested person." *Ijk Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 679 (2d Cir. 2022); s*ee In re Brookfield Infrastructure Partners L.P.*, No. 24-mc-533 (LJL), 2025 U.S. Dist. LEXIS 100269, at *32 (S.D.N.Y. May 27, 2025) (recognizing that an Applicant is an "interested person," when there is a "'procedural mechanism by which the [applicant] may inject the discovery it seeks' into the foreign proceeding.") (citation omitted).

Here, because a conviction of Lysenko and Voevodin will have significant prejudical effect in the prosecution against Applicant, and Applicant is a named co-conspirator, Applicant has the legal right to submit evidence. Bubnov Decl., ¶¶ 12-15. If that court refuses to accept Applicant's evidence, or otherwise acts on its submission, Applicant has the ability to seek redress from both the Sverdlovsk Region Prosecutor's Office, and the Russian courts (in this case, the Leninsky District Court of Ekaterinburg), to compel the acceptance of his evidence. Bubnov Decl., ¶ 13. Therefore, Applicant qualifies as an "interested person" in Foreign Proceeding 1. *Id*.

Additionally, Applicant is an "interested person" in his capacity as the defendant in Foreign

Proceeding 2. Bubnov Decl., ¶¶ 10-15, 48-50. Hence, Applicant meets the third statutory requirement under Section 1782.

### C.    The Discretionary Factors Weigh in Favor of Granting Relief

As noted above, once the district court has determined that the mandatory requirements for relief under § 1782 are met, the Court is free to grant discovery in its discretion. *Optimal Inv. Servs., S.A.*, 773 F.3d at 460.[23] Additionally, that discretion must be guided by the twin policy aims of § 1782: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012). Here, these discretionary factors weigh in favor of granting the requested relief.

First, the Discovery Targets are not parties or expected to become parties to the Foreign Proceedings. Accordingly, this factor weighs in favor of granting the Application. *See Intel*, 542 U.S. at 264 ("the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."). The Discovery Targets merely possess information as to U.S. Dollar transactions concerning RegionProm purchases of Western Alloy Scrap, if any.

Second, there is no indication that the courts in Russia would not be receptive to the documentary evidence sought through the instant Application. Bubnov Decl., ¶ 51. *See In re Arida,*

---

[23]    The four factors guiding that discretion again are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because the "need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

*LLC*, No. 19-mc-522 (PKC), 2020 U.S. Dist. LEXIS 239397, 2020 WL 7496355, *24-25 (S.D.N.Y. Dec. 21. 2020) ("The consensus view among U.S. courts is that Russian tribunals are generally receptive to discovery obtained through section 1782."); *In re Kolomoisky*, No. M19-116, 2006 U.S. Dist. LEXIS 58591, 2006 WL 2404332, at *5-6 (S.D.N.Y. Aug. 18, 2006) ("There is no evidence that the Russian government or the court in which the Moscow Action is occurring opposes Petitioner's discovery request."). Even if the documents were not used as evidence in those proceedings, the Second Circuit has held that Section 1782(a) contains no requirement that particular evidence be admissible in a foreign proceeding to be considered "for use in a proceeding in a foreign or international tribunal." *Brandi-Dohrn*, 673 F.3d at 77.

Third, the evidence sought through the instant Application would be admissible and does not otherwise circumvent any proof-gathering restrictions in Russia. Bubnov Decl., ¶ 51.

Lastly, this Application is not unduly intrusive or burdensome. The proposed requests to the Discovery Targets, demonstrated in the sample subpoena attached as **Exhibit B**, are narrowly tailored in scope and timeframe. Bubnov Decl., ¶ 45.1.; Raykhelson Decl., ¶ 21. The Respondent Banks are known to act as correspondent or intermediary banks for USD wire transfers originating from foreign banks. *See* Bluestone Decl., ¶¶ 7, 25, 27-28. TCH operates the CHIPS payment system that, along with the Fedwire payment system, process virtually all U.S. Dollar denominated wires for the world.[24] Thus, the New York Banks and TCH will likely possess documents showing

---

[24]    *See Banque Worms v. BankAmerica Intern.*, 77 N.Y.2d 362, 370 n.2 (1991) ("Wholesale wire transfers are generally made over the two principal wire payment systems: the Federal Reserve Wire Transfer Network (Fedwire) and the CHIPS. The CHIPS network handles 95% of the international transfers made in dollars, transferring an average of $750 billion per day.") (citation omitted). Fedwire is the Federal Reserve's payment system. *Id.*, at n.2. The Federal Reserve is not subject to service of process by private litigants, hence the need to subpoena the Respondent Banks who handle the bulk of intermediary wire transfers cleared through Fedwire.

whether RegionProm purchased Western Alloy titanium scrap in U.S. Dollars during the relevant time period. *Id.*, at ¶ 28. These banks include the correspondent banks capable of processing U.S. Dollar denominated transfers, which will support Applicant's defense. The proposed requests to the Discovery Targets, demonstrated in the sample subpoena attached to the Application, seek limited records relating to wire transactions for which the Discovery Targets were involved as originating bank, beneficiary bank, intermediate or correspondent bank to CHIPS, Fedwire, or where the Discovery Targets otherwise facilitated interbank funds transfers, as well as documents relating thereto, for the limited period beginning July 11, 2015 to November 8, 2019. Bubnov Decl., ¶ 45.1.; Raykhelson Decl., ¶ 21. This period is likely within the Discovery Targets' document retention policies and the documentary evidence sought is of the type that Discovery Targets regularly and easily retrieve and produce as third parties or actual parties in litigation. Bluestone Decl., ¶¶ 26-27.

Additionally, because Applicant expects there to be no U.S. Dollar transactions located, the evidence the Discovery Targets will be seeking will not be burdensome.[25] Finally, the information sought is the type of evidence that the Discovery Targets regularly retrieve and

---

[25]    The absence of the records sought by Applicant here can itself be evidence on the merits. *See AZ v. Shinseki*, 731 F.3d 1303, 1315 (Fed. Cir. 2013) (At common law, the majority of courts held that where circumstances supported the conclusion that "an entry *would naturally have been made* if a transaction had occurred," then evidence showing the *absence* of an entry "should ordinarily be equivalent to an assertion that no such transaction occurred, and therefore should be admissible in evidence for that purpose."); FRE 803(7); *United States v. Robinson*, 544 F.2d 110, 114 (2d Cir. 1976) ("The absence of a record of an event which would ordinarily be recorded gives rise to a legitimate negative inference that the event did not occur."); *In re Bernard L. Madoff Investment Securities, LLC*, 605 B.R. 570, 587 n.9 (Bankr. S.D.N.Y. 2019) (stating that even though Appellant did not pursue the point, the Court could "imagine circumstances in which the absence of such [bank] records could be consequential as to whether the corresponding check withdrawal occurred."); *In re Application of Operacion y Supervision de Hoteles, S.A. de C.V.*, 2015 WL 82007, *7 (S.D.N.Y. Jan. 6, 2015) (fact that non-party witness "would even claim to have no knowledge [of the requests] is the *very reason* why his testimony is so relevant.") (emphasis in original).

produce as a third party or actual party in the litigation.

As such, each discretionary factor identified by the *Intel* Court weighs in favor of granting the Application.

WHEREFORE, Applicant respectfully requests that this Court enter an Order, in the proposed, or substantially similar, form as the accompanying Proposed Order:

> (a)     exercising its discretion, pursuant to 28 U.S.C. § 1782, and granting this *Ex Parte* Application for Judicial Assistance;
>
> (b)     granting Applicant leave to conduct discovery pursuant to the Federal Rules of Civil Procedure, including, but not limited to, leave to serve the subpoenas on the Discovery Targets, in substantially the same form as the subpoena attached as Exhibit B to this Application;
>
> (c)     reserving jurisdiction to grant Applicant leave to serve follow-up subpoenas on any other person or entity as may be necessary to obtain the evidence described in the Application; and
>
> (d)     granting such other and further relief as this Court deems just and proper.

DATED: September 26, 2025                    Respectfully submitted,

                                            **BLUESTONE, P.C.**
                                            *Attorneys for Applicant*

                                            By: */s/ M. Zachary Bluestone*

                                            M. Zachary Bluestone
                                            52 Duane Street, 7th Floor
                                            New York, NY 10007
                                            (646) 970-7712
                                            mzb@bluestonelaw.com