UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

IN RE: APPLICATION OF IGOR                    **25-MC-427 (VSB) (VF)**
RAYKHELSON, FOR AN ORDER TO
CONDUCT DISCOVERY FOR USE IN                  **REPORT &**
FOREIGN PROCEEDINGS                           **RECOMMENDATION**


----------------------------------------------------------X
**VALERIE FIGUEREDO, United States Magistrate Judge**

**TO: THE HONORABLE VERNON S. BRODERICK, United States District Judge.**

On September 26, 2025, Igor Raykhelson ("Raykhelson" or "Applicant") filed this

application *ex parte,* seeking an order pursuant to 28 U.S.C. § 1782 authorizing him to issue

subpoenas to sixteen financial institutions for information and documents for use in foreign

criminal proceedings in Russia. ECF No. 1. On November 13, 2025, PJSC VSMPO-AVISMA

Corporation ("VSMPO") filed a motion to intervene in this action (ECF No. 9) and a motion for

reciprocal discovery of any information and documents Raykhelson receives as a result of

Section 1782 relief (ECF No. 11). For the reasons that follow, I respectfully recommend that the

Section 1782 application be **GRANTED**, because the application satisfies the statutory and

discretionary factors. I further recommend that the motion to intervene be **DENIED**, and the

motion for reciprocal discovery be **GRANTED.**

1

## BACKGROUND

A. Factual Background[1]

Raykhelson has been a U.S. citizen since the 1980s and has never been a Russian citizen nor had a residence in Russia. ECF No. 4 at ¶ 19. Since 2012, Raykhelson has worked as a consultant for Interlink Metals & Chemicals AG ("Interlink") and has been responsible for facilitating the supply of American Society for Testing and Materials ("ASTM")-standard titanium scrap metal from the United States and Europe to Russian companies. Id.; ECF No. 5 at ¶ 6. ASTM-standard titanium scrap "includes lighter, stronger titanium for the aerospace industry" and is referred to as "Western Alloy Scrap." ECF No. 5 at ¶ 6. Raykhelson attests that in his forty years in the titanium industry, he has "never been offered a price in any currency other than [U.S. dollars]" for Western Alloy Scrap. Id. at ¶ 20.

VSMPO is a Russian company that manufactures and exports ASTM-quality titanium products used in aircraft construction. Id. at ¶ 9. VSMPO is one of the largest producers of titanium in the world. Id. Mikhail Voevodin ("Voevodin") is the former general director of VSMPO. ECF No. 4 at ¶¶ 6-7. NPO Vtorpromresursy LLC ("VPR") and Torgovo-promyshlenny Vektor LLC ("TPV") are Russian titanium suppliers to VSMPO. Id. at ¶¶ 6, 20, 27.

On July 13, 2023, criminal proceedings were brought against Voevodin in Russia for allegedly approving contracts between VSMPO and both VPR and TPV at inflated prices. Id. at ¶ 7. Voevodin was charged with abuse of authority under Article 201(2) of the Russian Criminal Code, and "the case was sent to the Verkhnyaya Salda District Court" on May 31, 2024. Id. On September 20, 2024, the Verkhnyaya Salda District Court "returned the case to prosecutors,

---

[1] The facts recounted herein are taken from the Declaration of Roman Bubnov (ECF No. 4), a Russian attorney for Raykhelson who submits the declaration in support of Raykhelson's Section 1782 application.

holding that the facts might constitute the more serious crime of fraud under Article 159 [of the Russian Criminal Code],” as well as implicate other coconspirators. Id. Raykhelson’s Russian counsel, Roman Bubnov (“Bubnov”), attests that this decision “paved the way for the expansion of the investigation and the later inclusion of [Raykhelson] as a suspect.” Id. The case was “transferred between investigative bodies” in late 2024 and early 2025 and ultimately “returned to the Sverdlovsk Regional branch of the Investigative Committee [of the Russian Federation], where VSMPO is headquartered.” Id. at ¶ 8.

On June 23, 2025, the Investigative Committee of the Sverdlovsk Region initiated a criminal case against Raykhelson, Voevodin, and other unidentified persons under Part 4, Article 159 of the Russian Criminal Code, “alleging fraud in an especially large amount.” Id. at ¶ 6. The actions under investigation concern the alleged sale of titanium stock at inflated prices through VPR and TPV and to VSMPO, allegedly causing losses exceeding 1.5 billion Russian rubles to VSMPO. Id. On June 24, 2025, Voevodin was “indicted for fraud under Article 159(4), accused of conspiring with others, including [Raykhelson], to misappropriate funds by arranging inflated contracts with VPR and TPV between January 11, 2016 and May 8, 2020.” Id. at ¶ 9. The next day, Evgeny Lysenko (“Lysenko”), director of VPR, was indicted on the same charges. Id. Voevodin and Lysenko are in Russian custody pending trial. Id.

In the same action, Raykhelson “has been formally charged with conspiracy to commit fraud for inflating prices on sales to VSMPO under Article 159(4),” and there is “a federal arrest warrant [for Raykhelson] limited to the territory of the Russian Federation.” Id. at ¶ 10. The allegations against Raykhelson “concern whether sales of titanium scrap were at inflated prices, and whether [Raykhelson] improperly influenced VSMPO’s contracting.” Id. at ¶ 45. The allegations stem from the theory that RegionProm, another titanium supplier, offered or sold the

same Western Alloy titanium feedstock to VSMPO but not at an inflated price. Id. at ¶¶ 45.1, 46.1-46.4, 48. Raykhelson maintains that "RegionProm sold, and sells, a different titanium material than VPR/TPV (retail-grade compared to aerospace quality meeting ASTM Standards), which, between 2016-2020, was considerably less expensive," which will establish that "RegionProm did not purchase Western Alloy Scrap" and "support [the] defense that RegionProm could not have sold titanium materials to VSMPO, between 2016-2020, that met ASTM Standards, and therefore the Russian authorities' basis for fraudulently inflated prices is not credible." ECF No. 5 at ¶¶ 18-19.

If the prosecutor approves the indictment against Raykhelson, the case will be transferred to the Verkhnesaldinsky District Court, which will sentence him. See ECF No. 4 at ¶ 42. Raykhelson's counsel, Bubnov, contends that "once there is a judgment sentencing [ ] Voevodin and Lysenko, this will pave the way for the sentencing of [Raykhelson] as a co-conspirator or participant in the same group of individuals." Id. at ¶ 14. Bubnov also attests that "[i]n Russian criminal practice, it is increasingly common for pre-trial proceedings in a criminal case, from its initiation to its referral to trial, to be conducted in the absence of the accused." Id. at ¶ 15.

B.  Procedural Background

On September 26, 2025, Raykhelson submitted an *ex parte* application for judicial assistance pursuant to 28 U.S.C. § 1782. ECF No. 1. Raykhelson seeks discovery from Bank of America, N.A., Bank of China, Barclays Bank PLC, BNP Paribas, Citibank, N.A., Commerzbank AG, Deutsche Bank Trust Co. Americas, HSBC Bank USA, JPMorgan Chase Bank, N.A., Société Générale, Standard Chartered Bank, Bank of Nova Scotia, The Bank of New York Mellon, UBS AG, and Wells Fargo Bank (the "New York Banks") and The Clearing House Payments Company LLC ("TCH") (collectively, the "Discovery Targets"). ECF No. 1 at

4

5.[2] Raykhelson seeks logs, spreadsheets, and other documents from July 11, 2015, to November 8, 2019, pertaining to wire transfers in which the Discovery Targets "acted **solely** as an intermediary bank or correspondent bank to CHIPS, Fedwire, or otherwise to facilitate an interbank funds transfer" related to RegionProm. ECF No. 1-2 at 6, 8 (emphasis in original). Raykhelson believes that the sought-after discovery is necessary to defend himself in the Russian criminal proceedings against him. ECF No. 1 at 13-15. Raykhelson's U.S. counsel, Michael Zachary Bluestone ("Bluestone") attests that the information will be used "to rebut the prosecution's fraud allegations in the Foreign Proceedings and establish that RegionProm could not have sold Western Alloy at an inflated price because RegionProm did not purchase Western Alloy in the first place (which is only traded in USD)." ECF No. 3 at ¶ 5.

VSMPO filed a notice of intent to intervene on September 30, 2025 (ECF No. 6) and moved to intervene in this action on November 13, 2025 (ECF No. 9). VSMPO also filed a motion for reciprocal discovery on November 13, 2025. ECF No. 11. On November 28, 2025, Raykhelson filed an omnibus response to the motion to intervene and the motion for reciprocal discovery. ECF No. 18. On December 5, 2025, VSMPO filed a reply. ECF No. 20.

By order dated February 12, 2026, the Honorable Vernon S. Broderick referred the instant application, motion to intervene, and motion for reciprocal discovery to the undersigned for a report and recommendation. See ECF No. 21. On March 18, 2026, Raykhelson submitted a letter to the Court seeking an expedited decision on his application on the grounds that the Russian government has amended the indictment and issued a decree directing that a request be made to Interpol for the issuance of a Red Notice against him. ECF No. 22.

---

[2] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the electronically generated pagination in those documents.

**LEGAL STANDARD**

A.  Intervention

Pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, courts "must permit

anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is

so situated that disposing of the action may as a practical matter impair or impede the movant's

ability to protect its interest, unless existing parties adequately represent that interest." Fed. R.

Civ. P. 24(a). To intervene as a matter of right, "an applicant must (1) timely file an application,

(2) show an interest in the action, (3) demonstrate that the interest may be impaired by the

disposition of the action, and (4) show that the interest is not protected adequately by the parties

to the action." N.Y. News, Inc. v. Kheel, 972 F.2d 482, 485 (2d Cir. 1992). In considering

whether a movant is entitled to permissive intervention, "a district court considers the same

factors [outlined above], as well as whether the proposed intervention will unduly delay or

prejudice the adjudication of the [original] parties' rights." In re Tel. Media Grp. Ltd., No. 23-

MC-215 (JGLC), 2023 WL 5770115, at *2 (S.D.N.Y. Sept. 6, 2023) (internal citations omitted).

B.  Section 1782

Under 28 U.S.C. § 1782,

> [t]he district court of the district in which a person resides or is found may order
> him to give his testimony or statement or to produce a document or other thing for
> use in a proceeding in a foreign or international tribunal . . . . The order may be
> made . . . upon the application of any interested person and may direct that the
> testimony or statement be given, or the document or other thing be produced,
> before a person appointed by the court.

28 U.S.C. § 1782(a).

A district court has jurisdiction to grant an application under Section 1782 if the

following statutory requirements are met: "(1) the person from whom discovery is sought resides

6

or is found within the district; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." Kiobel by Samkalden v. Cravath, Swaine & Moore, LLP, 895 F.3d 238, 243 (2d Cir. 2018) (cleaned up); see also In re Microsoft Corp., 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006), abrogated on other grounds by, In re del Valle Ruiz, 939 F.3d 520 (2d Cir. 2019) (citing Schmitz v. Bernstein, Liebhard & Lifshiftz, LLP, 376 F.3d 79, 83 (2d Cir. 2004)); Fed. Republic of Nigeria v. VR Advisory Servs., Ltd., 27 F.4th 136, 148 (2d Cir. 2022) (citation omitted). Additionally, the statute requires that the discovery not be "in violation of any legally applicable privilege." Mangouras v. Squire Patton Boggs, 980 F.3d 88, 97 (2d Cir. 2020) (quoting 28 U.S.C. § 1782(a)); In re Guo, 965 F.3d 96, 102 n.3 (2d Cir. 2020) (explaining that Section 1782 also requires "that the discovery not be in violation of any legally applicable privilege") (internal quotation marks and citation omitted).

Provided that the statutory requirements are met, a court then determines, in its discretion, whether the discovery should be permitted. Kiobel, 895 F.3d at 244; Fed. Republic of Nigeria, 27 F.4th at 148. The Supreme Court has identified four discretionary factors (known as the Intel factors) that a court considers when ruling on a Section 1782 application: (1) whether the person from whom the discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the Section 1782 application contains unduly intrusive or burdensome discovery requests. See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004). Courts

must exercise their discretion in light of the "twin aims" of Section 1782: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts." Id. at 252 (citation omitted).

As the Second Circuit has explained, "the Intel factors are not to be applied mechanically," and a court should "take into account any other pertinent issues arising from the facts of the particular dispute." Kiobel, 895 F.3d at 245. Additionally, although the instant application is *ex parte*, "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*." Gushlak v. Gushlak, 486 F. App'x 215, 217 (2d Cir. 2012) (summary order). The Second Circuit has also clarified that a respondent from whom discovery is sought "can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." Id.

C.  Reciprocal Discovery

"Although 'reciprocal discovery' is not mentioned in the text of Section 1782, see Sampedro v. Silver Point Capital, L.P., 958 F.3d 140, 144 (2d Cir. 2020), courts frequently entertain requests for such discovery." In re Porsche Automobil Holding S.E., No. 19-MC-166 (RA), 2021 WL 2530277, at *3 (S.D.N.Y. June 21, 2021). The Second Circuit and the Supreme Court "have suggested that a district court could condition relief [under 28 U.S.C. § 1782] upon a reciprocal exchange of information, as such would lend parity to the disclosure mix." In re Novalpina Cap. Partners I GP S.À.R.L., No. 23-MC-25 (PGG), 2025 WL 1160854, at *32 (S.D.N.Y. Apr. 21, 2025) (internal quotation marks and citations omitted, alterations in original). "Reciprocal discovery is appropriate where '[t]here is apparently no process by which [the party requesting reciprocal discovery] can seek and obtain documents from [the other party] in the [foreign] proceedings in the manner in which discovery may proceed in the U.S. under 28 U.S.C.

§ 1782.'" Id. (quoting In re Consorcio Minero, S.A. v. Renco Grp., Inc., No. 11-MC-354 (RWS), 2012 WL 1059916, at *4 (S.D.N.Y. Mar. 29, 2012)).

In determining whether to grant reciprocal discovery, courts have considered various discretionary factors including "(1) how closely the reciprocal discovery sought relates to the materials requested in the initial Section 1782 application; (2) whether the respondent would be unable to initiate its own independent Section 1782 application against the initial applicant; (3) the location of the evidence sought and whether the respondent would be able to obtain the material from the applicant in the foreign litigation; (4) the degree to which the respondent has a substantial interest in the foreign litigation; and (5) the timing of the request for reciprocal discovery." In re Porsche Automobil Holding S.E., 2021 WL 2530277, at *3 (internal quotation marks and citations omitted).

## DISCUSSION

A.  VSMPO's motion to intervene and request for reciprocal discovery are duplicative.

VSMPO has brought a motion to intervene (ECF No. 9) and a motion for reciprocal discovery (ECF No. 11), but it seeks the same relief in both motions: the ability to obtain copies of the materials that are provided to Applicant through the Section 1782 subpoenas. See ECF No. 10 at 5; ECF No. 12 at 19. In a response to the two motions, Raykhelson argues that "[t]he Court should deny the motion [to intervene] and simply direct [Raykhelson] to provide VSMPO with copies of any documents obtained under the subpoenas." ECF No. 18 at 2. For the foregoing reasons, I recommend that the motion to intervene be denied and that the motion for reciprocal discovery be granted.

Beginning with the motion to intervene, VSMPO does not argue that Raykhelson is not entitled to relief under Section 1782 and nor does VSMPO challenge the lawfulness of the

subpoenas Raykhelson seeks to issue. Instead, VSMPO appears to be seeking intervention because it wants "copies of the materials sought by Mr. Raykhelson." ECF No. 10 at 10; see also id. at 11 (asking that "any relief awarded be conditioned upon VSMPO receiving reciprocal discovery"). But this relief can be obtained short of intervention. As Raykhelson correctly observes, permitting intervention would only unnecessarily complicate the proceeding. ECF No. 18 at 1.

Turning to the motion for reciprocal discovery, VSMPO explains that it "seeks copies of any materials obtained in this proceeding to ensure the Russian court receives a complete record of all available discovery." ECF No. 12 at 5. VSMPO avers that because Raykhelson intends to use "negative evidence to prove that banking transactions did not occur . . . [t]he relief sought by VSMPO is particularly warranted because it guards against the risk that the only party in possession of banking records fails to make a full disclosure to a foreign tribunal." Id. at 5-6. Further, VSMPO asserts that reciprocal discovery "is particularly appropriate because VSMPO is a duly recognized victim of the fraudulent scheme, is actively seeking restitution, and has a direct interest in the outcome." Id. at 6.

"Section 1782 grants district courts wide discretion to determine whether to grant discovery and equally wide discretion to tailor such discovery to avoid attendant problems." In re Genial Institucional Corretora de Cambio, Titulos e Valores Mobiliarios S.A., No. 24-MC-348 (JMF), 2025 WL 40783, at *6 (S.D.N.Y. Jan. 7, 2025) (quoting In re Esses, 101 F.3d 873, 876 (2d Cir. 1996)). Here, four of the five discretionary factors weigh in favor of granting reciprocal discovery to VSMPO.

First, VSMPO seeks "precisely what is sought by Mr. Raykhelson through his Application" and nothing more. ECF No. 12 at 19. Second, VSMPO avers that it cannot obtain

the discovery sought by Raykhelson in the Russian criminal proceedings because the evidence is in this District, not Russia, and because Raykhelson is a fugitive from the Russian proceedings. Id. at 20. Third, VSMPO has a substantial interest in the foreign proceedings in that it is the victim of the crime at the center of those proceedings and has a right to seek restitution. Id. Fourth, VSMPO timely moved for reciprocal discovery. Raykhelson submitted his Section 1782 application for judicial assistance on September 26, 2025 (ECF No. 1), and VSMPO filed its motion for reciprocal discovery on November 13, 2025, less than two months later (ECF No. 11). To be sure, VSMPO could initiate its own Section 1782 action for the same information Raykhelson is seeking here, and VSMPO initiated its own Section 1782 action seeking different information. ECF No. 12 at 19-20; see In re VSMPO-AVISMA Corporation, No. 25-MC-444 (VSB) (S.D.N.Y.). Nonetheless, because all but one factor weighs in favor of granting reciprocal discovery and Raykhelson does not oppose the request, I recommend that VSMPO's motion for reciprocal discovery be granted.

In short, VSMPO's motion to intervene is a repackaged version of its motion for reciprocal discovery, and intervention is not necessary to achieve the only relief VSMPO seeks by way of its intervention motion. Accordingly, I recommend that VSMPO's motion to intervene be denied and its motion for reciprocal discovery be granted.

B.  Raykhelson's application satisfies the Section 1782 statutory factors.

As explained below, Raykhelson has satisfied the statutory factors in Section 1782.

1.  *The Discovery Targets are found in this District.*

First, each of the Discovery Targets is found in this District. "[Section] 1782's 'resides or found' language extends its reach to the limits of personal jurisdiction consistent with due process." In re del Valle Ruiz, 939 F.3d at 534. "This can be met by showing that the Court has

11

[ ] general or all-purpose jurisdiction[.]" In re Polygon Glob. Partners LLP, No. 21-MC-364 (ER), 2021 WL 2117397, at *4 (S.D.N.Y. May 25, 2021) (internal quotation marks and citation omitted). "For a corporation, the appropriate forum for the exercise of general jurisdiction is where the corporation 'is fairly regarded as at home,' Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011), which is typically 'where it is incorporated or maintains its principal place of business.'" In re Kuwait Ports Auth., No. 20-MC-46 (ALC), 2021 WL 5909999, at *6 (S.D.N.Y. Dec. 13, 2021) (quoting Brown v. Lockheed Martin Corp., 814 F.3d 619, 627 (2d Cir. 2016)). Where subpoena targets are not subject to general jurisdiction, an applicant must establish specific personal jurisdiction. In re Golden Meditech Holdings Ltd., No. 24-MC-24 (DEH), 2024 WL 1349135, at *3 (S.D.N.Y. Mar. 29, 2024). In the context of specific personal jurisdiction over a Section 1782 discovery application, the Second Circuit has explained that "where the discovery material sought proximately resulted from the [subpoena target]'s forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery." In re del Valle Ruiz, 939 F.3d at 530. This means that either the "[subpoena target]'s having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all," or "where the [subpoena target]'s contacts are broader and more significant, a [Section 1782 applicant] need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts." Id.

The Court has general personal jurisdiction over 13 of the 16 Discovery Targets. See In re de Aquino Chad, No. 19-MC-261 (WHP), 2019 WL 2502060, at *3 (S.D.N.Y. June 17, 2019) (finding that banks alleged to be headquartered in this District were subject to general jurisdiction, satisfying the first prong of Section 1782). Bank of China, Bank of Nova Scotia, Barclays Bank PLC, BNP Paribas, Citibank, N.A., Deutsche Bank Trust Company Americas,

12

HSBC Bank USA, N.A., JP Morgan Chase Bank, N.A., Société Générale, Standard Chartered Bank, The Bank of New York Mellon, UBS AG, and TCH all maintain a headquarter in this District. See ECF No. 3 at ¶¶ 10, 13, 17-19, 21-22, 25; In re Abraaj Inv. Mgmt. Ltd., No. 20-MC-229 (VSB), 2023 WL 2674752, at *4-5 (S.D.N.Y. Mar. 29, 2023) (concluding that the Court had general personal jurisdiction over Barclays Bank PLC, BNP Paribas, Citibank, N.A., Deutsche Bank Trust Company Americas, Société Générale, Standard Chartered Bank, The Bank of New York Mellon, UBS AG, and The Clearing House Payments Company LLC for purposes of Section 1782 where applicants "proffered facts demonstrating that the[ ] [banks] [were] headquartered in New York"); In re W. Afr. Min. Trading Ltd., No. 24-MC-114 (DEH), 2024 WL 3862293, at *1-2 (S.D.N.Y. Aug. 19, 2024) (concluding that Deutsche Bank Trust Company Americas and UBS AG "are each headquartered and/or have their principal place of business in New York" and therefore subject to general jurisdiction in this District for Section 1782); In re Res. Int'l Holdings CV, No. 24-MC-430 (JPC) (OTW), 2025 WL 1360893, at *2, 4 (S.D.N.Y. May 9, 2025) (explaining that The Clearing House Payments Company LLC and other banks were "found" in in this District for Section 1782 "because they all have offices and conduct business in this [D]istrict").

For the remaining three Discovery Targets—Bank of America, N.A., Commerzbank AG, and Wells Fargo Bank, N.A —the Court has specific personal jurisdiction because the banks maintain an office in this District, regularly transact business in this District, and the discovery sought is a proximate result of the contacts with this District. The sought-after discovery "directly relates to TCH and the New York Banks' U.S. Dollar clearing business in this District—namely, U.S. Dollar-denominated wire transfers for which the New York Banks and TCH were involved in as originating bank, beneficiary bank, intermediate or correspondent bank

to CHIPS, Fedwire, or where the Discovery Targets otherwise facilitated interbank funds transfers[.]" ECF No. 1 at 16; ECF No. 3 at ¶ 6. Raykhelson's application explains that "the discovery sought here is records relating to wire transfers and documents relating thereto routed through the New York Banks and TCH in New York City revealing whether RegionProm purchased Western Alloy Charge, first by showing whether there were any USD transactions, and whether RegionProm purchased from Western Alloy scrap suppliers." ECF No. 1 at 20. And counsel's sworn declaration contends that "the New York Banks act as correspondent or intermediary banks in this District for U.S. Dollar-denominated wire transfers passing from domestic to international banks[.]" ECF No. 3 at ¶ 7. Raykhelson thus seeks the records of those U.S. Dollar-denominated wire transfers that were routed through NY-based accounts. See id. at ¶ 5 (explaining that Raykhelson "seeks to obtain documentary evidence from the Discovery Targets, which are in the business of processing U.S. Dollar-denominated wire transfers in New York City and will have processed wire transfers relevant to the issues in the Foreign Proceedings"); see also ECF No. 4 at ¶ 47 (explaining that "U.S. discovery targets therefore include: New York correspondent banks (payment flows, especially USD-denominated transactions reflecting the sourcing of Western alloys)"). The declaration also states that Bank of America, N.A., Commerzbank AG, and Wells Fargo Bank, N.A. "regularly transact[ ] business in this District," maintain at least one branch in this District, and participate in both "the Clearing House Interbank Payments System [ ], which is the largest private sector U.S. Dollar clearing system in the world, [and] the Federal Reserve's Fedwire Fund Service." ECF No. 3 at ¶¶ 8-9, 14, 24.

Other courts in this District have found the existence of personal jurisdiction over these specific banks—Bank of America, N.A., Commerzbank AG, and Wells Fargo Bank, N.A.—

14

where, as here, the banks either served as an intermediary bank for U.S. Dollar funds transferred through bank accounts in New York or had an office or branch in the District out of which they regularly transacted business. See In re Abraaj Inv. Mgmt. Ltd., 2023 WL 2674752, at *5 (concluding that the court had specific personal jurisdiction over Bank of America, N.A., Commerzbank AG, and Wells Fargo Bank, N.A. because Bank of America and Wells Fargo served as correspondent banks "for US Dollar funds transfers" and Commerzbank "regularly transact[s] business in the Southern District and maintain[s] an office or branch in this District") (internal quotation marks and citations omitted); see also In re JSC BTA Bank, 577 F. Supp. 3d 262, 264 n.1, 266 (S.D.N.Y. 2021) (concluding that, among others, Bank of America, N.A., Commerzbank AG, and Wells Fargo Bank, N.A. were found in this District for Section 1782 where applicant "provided evidence that each respondent bank maintains an office (in many cases, its corporate headquarters) and does business (including correspondent and intermediary banking) in the Southern District of New York").

The first statutory factor is therefore satisfied.

2. *The discovery requested by Raykhelson is "for use" in foreign proceedings.*

Second, Raykhelson's requested discovery satisfies the "for use" requirement in Section 1782. Section 1782 requires an applicant to make a "*de minimis* showing that it is seeking discovery 'for use' in proceedings[.]" In re Atvos Agroindustrial Investimentos S.A., 481 F. Supp. 3d 166, 175 (S.D.N.Y. 2020). The term "for use" is afforded a "broad interpretation," and the "sought-after evidence need not be admissible or even discoverable under the rules of the foreign jurisdiction." Deposit Ins. Agency v. Leontiev, No. 17-MC-00414 (GBD) (SN), 2018 WL 3536083, at *3 (S.D.N.Y. July 23, 2018) (internal citations omitted). An applicant need only show that he has "the practical ability to inject the requested information into a foreign

proceeding." In re Accent Delight Int'l Ltd., 869 F.3d 121, 132 (2d Cir. 2017); see also In re

Kingstown Partners Master Ltd., No. 21-MC-691 (LTS), 2022 WL 1081333, at *5 (S.D.N.Y.

Apr. 8, 2022) (noting that the "for use" requirement is "afforded a broad interpretation" and is

satisfied if the "materials sought are to be used at some stage of a foreign proceeding") (internal

quotation marks and citations omitted).

Here, Raykhelson seeks to use the sought-after discovery to show that RegionProm did

not purchase titanium from suppliers in U.S. Dollars, and therefore RegionProm did "not have

Western Alloy Scrap to turn into Western Alloy Charge to then sell to VSMPO," as a defense to

the allegation that Raykhelson's sales to VPR and TPV were at inflated prices when compared to

sales made by RegionProm. ECF No. 1 at 22. And Raykhelson's Russian counsel, Bubnov,

explains in a sworn declaration that under Russian law, suspects in criminal cases—such as

Raykhelson—are permitted "to present evidence." ECF No. 4 at ¶ 12. Bubnov also attests that

"[u]nder Russian law, documents lawfully obtained abroad, such as those sought in this

Application, are admissible in defense." Id. at ¶ 51. This suffices to make the necessary *de

minimis* showing that the discovery sought by Raykhelson will be for use in a foreign criminal

proceeding. See In re Ulmans, No. 23-MC-23 (GHW) (VF), 2023 WL 3853703, at *4 (S.D.N.Y.

Apr. 20, 2023), adopted by, 2023 WL 3412769 (S.D.N.Y. May 12, 2023) (concluding that "for

use" requirement was satisfied where applicant sought to use the requested discovery "at his trial

[in Latvia] to prove his innocence of the charged crime" and applicant's foreign counsel attested

that "Latvian courts would permit admission of such evidence"). Accordingly, the second

statutory factor is also satisfied.

### 3. *Raykhelson is an "interested person" under Section 1782.*

Third, Raykhelson is plainly an "interested person" for purposes of Section 1782 because he is one of the subjects of the criminal prosecution in the Russian proceedings. See Intel, 542 U.S. at 256 ("No doubt litigants are included among . . . the interested persons who may invoke § 1782[.]") (internal quotation marks, alteration, and citation omitted); In re Furstenberg Finance SAS, 785 F. App'x 882, 885 (2d Cir. 2019) (summary order) (affirming determination that applicants were interested persons in light of affidavits indicating that they would be parties to foreign criminal proceeding and would "submit the relevant evidence directly" in that proceeding). Because Raykhelson has "been charged . . . as an accused" in the Russian criminal proceeding (ECF No. 1 at 13-14), the third and final statutory factor is therefore satisfied.

### C. Raykhelson's application satisfies the discretionary *Intel* factors under Section 1782.

Once the statutory requirements are met, a district court has discretion to determine whether, and to what extent, to honor a request for assistance under Section 1782. See Intel, 542 U.S. at 260-61. A district court acts within its discretion so long as it fashions its order in accordance with the "twin aims" of Section 1782—"providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." In re Aldunate, 3 F.3d 54, 58 (2d Cir. 1993) (quoting In re Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992)); see also In re Edelman, 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a)—both over whether to grant a discovery order and, if so, what limits to place on that discovery."). As explained below, the discretionary factors weigh in favor of permitting Raykhelson to seek the requested discovery.

17

### 1. *Participation in the foreign proceeding*

The first <u>Intel</u> factor provides that "when the person from whom discovery is sought is a participant . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." <u>Intel</u>, 542 U.S. at 264. Courts in this District have found that this factor weighs in favor of a Section 1782 applicant where "none of the entities from whom discovery is sought is a party to the [foreign proceeding]." <u>In re Klein</u>, No. 20-MC-203 (PKC), 2022 WL 1567584, at *8 (S.D.N.Y. May 18, 2022).

This factor favors Raykhelson because the application plainly states that the Discovery Targets "are not parties or expected to become parties to" the foreign criminal proceedings. <u>See</u> ECF No. 1 at 26; <u>see</u> <u>In re Kuwait Ports Auth.</u>, 2021 WL 5909999, at *9 (quoting <u>Intel</u>, 542 U.S. at 264) ("The [Applicant] has represented that [the subpoena target] will not be a participant in the anticipated litigation proceedings, so the Application does not present a situation where 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'").

### 2. *Receptivity of the foreign court*

Under the second <u>Intel</u> factor, a district court considers "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." <u>Intel</u>, 542 U.S. at 264. "[A] district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782," such as proof "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures[.]"

Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir. 1995). "Granting discovery in the face of opposition from the foreign tribunal would undermine the spirit and purpose of the statute[.]" In re Microsoft Corp., 428 F. Supp. 2d at 194.

First, Raykhelson has been formally charged with crimes in Russia, and the pending criminal proceedings for which Raykhelson seeks discovery are undoubtedly adjudicative in nature. See In re Eurasian Bank, No. 19-MC-00568 (RA), 2020 WL 85226, at *1 (S.D.N.Y. Jan. 2, 2020) (granting Section 1782 application where discovery was for use in "an ongoing Kazakhstani criminal investigation"); In re Ulmans, 2023 WL 3853703, at *5 (finding second discretionary factor weighed in applicant's favor where applicant "ha[d] been formally charged with a crime in Latvia, and the pending criminal proceeding for which [applicant] s[ought] discovery [wa]s undoubtedly adjudicative in nature").

Second, there is no authoritative proof or indication that Russian courts generally are not receptive to Section 1782 assistance. To the contrary, other courts in this District have found that "[t]he consensus view among U.S. courts is that Russian tribunals are generally receptive to discovery obtained through [S]ection 1782." In re Arida, LLC, No. 19-MC-522 (PKC), 2020 WL 7496355, at *8 (S.D.N.Y. Dec. 21, 2020); Deposit Ins. Agency, 2018 WL 3536083, at *4 (explaining that "courts have continued to enforce subpoenas pursuant to § 1782 intended for use in Russian courts"); see also In re Kolomoisky, No. 19-MC-116 (SCR), 2006 WL 2404332, at *2 (S.D.N.Y. Aug. 18, 2006) ("There is no evidence that the Russian government or the court in which the Moscow Action is occurring opposes Petitioner's discovery request. There is also no indication that Petitioner's request is an attempt to circumvent foreign [Russian] proof-gathering restrictions or other policies."). Raykhelson's Russian counsel, Bubnov, attests that "[Raykhelson], being the suspect in the same criminal case as Voevodin and Lysenko has the

19

right to submit any evidence to support his and their cases as an interested party in the same criminal case." ECF No. 4 at ¶ 13. Bubnov also contends that "[u]nder Russian law, documents lawfully obtained abroad, such as those sought in this Application, are admissible in defense." Id. at ¶ 51.

Thus, this factor weighs in favor of granting Raykhelson's application.

### 3. *Circumvention of foreign proof-gathering restrictions*

The third Intel factor seeks to identify "attempt[s] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel, 542 U.S. at 264-65. "In the context of § 1782 and the third Intel factor, circumvention occurs where the applicant uses a § 1782 application to avoid measures that are *intended* to restrict certain means of gathering or using evidence." Fed. Republic of Nigeria, 27 F.4th at 153 (emphasis in original). For example, where the Section 1782 application "attempts to circumvent the more limited . . . rules of discovery" in the foreign jurisdiction, this weighs against granting the discovery sought. Kiobel, 895 F.3d at 245-46 (concluding that third Intel factor weighed against granting the application where the discovery could not be obtained under the "more limited Dutch rules of discovery"). Section 1782, however, does not limit a district court's authority to require the production of evidence "to materials that could be discovered in the foreign jurisdiction if the materials were located there." In re Hansainvest Hanseatische Inv.-GmbH, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018) (citation omitted). "The Second Circuit has observed that few if any foreign jurisdictions permit the scope of discovery available in U.S. courts, and that if district courts were free to refuse discovery based upon its unavailability in a foreign court § 1782 would be

20

irrelevant to much international litigation, frustrating its underlying purposes." In re Arida, LLC, 2020 WL 7496355, at *8 (internal quotation marks, citations, and alterations omitted).

Here, "there is no indication that any proof-gathering restrictions exist that would prevent this Court from granting the application." In re Ulmans, 2023 WL 3853703, at *6; Deposit Ins. Agency, 2018 WL 3536083, at *9 (concluding that "[a]bsent definitive proof that the Russian courts would reject the discovery materials obtained from this proceeding . . . the Court must assume that the Russian courts would accept that evidence"). Further, there is no evidence that Raykhelson is "engaged in a bad faith endeavor to misuse Section 1782" by circumventing Russian law. See In re Refinería de Cartagena S.A.S., No. 23-MC-455 (JPC), 2024 WL 95056, at *10 (S.D.N.Y. Jan. 8, 2024) (citation omitted).

This factor therefore also favors granting Raykhelson's application.

### 4. *Unduly burdensome request*

The final Intel factor directs courts to be mindful of overly intrusive or burdensome discovery requests. Intel, 542 U.S. at 264-65. "[A] district court evaluating a [Section] 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." Mees v. Buiter, 793 F.3d 291, 302 (2d Cir. 2015). As the Second Circuit has explained, if a court has "misgivings . . . about the impact of its participation in the foreign litigation," it is preferable for the court to issue "a closely tailored discovery order rather than . . . simply denying relief outright." Euromepa S.A., 51 F.3d at 1101.

Raykhelson's application and proposed sample subpoena do not suggest an anticipated course of conduct that would be unduly burdensome to the Discovery Targets. To the contrary, Raykhelson seeks temporally limited records of wire transfers related specifically to

RegionProm. ECF No. 1-2 at 5-6, 8. And Raykhelson's U.S. counsel, Bluestone, attests that "[t]he temporal scope of the discovery sought here is likely within [the Discovery Targets'] document retention policies," and that the Discovery Targets "keep electronic records of U.S. Dollar denominated wire transfers and are thus able to easily search and produce these records[.]" ECF No. 3 at ¶ 26.

"Moreover, should a bank served with a subpoena conclude that the requests are unduly burdensome, the bank may challenge the subpoena by moving to quash under Federal Rule of Civil Procedure 45." See In re Ulmans, 2023 WL 3853703, at *6. Any of the Discovery Targets may raise objections to the scope of the document requests in the subpoena, and any objections may be addressed following the issuance of the subpoenas. See In re Aso, No. 19-MC-190 (JGK) (JLC), 2019 WL 2345443, at *8 (S.D.N.Y. June 3, 2019) (granting Section 1782 application and explaining that "nothing in the Court's opinion precludes [the subpoena recipients] from filing objections to the subpoenas, which would permit further tailoring on a per-request basis").

In sum, because all of the statutory and discretionary factors weigh in favor of Raykhelson, I respectfully recommend that the Section 1782 application be granted, and Raykhelson be permitted to issue the subpoenas to the Discovery Targets.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the Section 1782 application be granted, the motion to intervene be denied, and the motion for reciprocal discovery be granted.

DATED:    New York, New York
          May 4, 2026

_____
VALERIE FIGUEREDO
United States Magistrate Judge

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Vernon S. Broderick. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**

23